UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VELLA CRAWFORD,

    Plaintiff,

v.

MAGNA SEATING OF AMERICA, INC.,

    Defendant.

Case No. 23-13298
Honorable Laurie J. Michelson

**OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT [21] AND DENYING MOTION TO BAR ENFORCEMENT OF AN EX PARTE AGREEMENT [20]**

The parties have submitted cross-motions related to one key issue: whether Vella Crawford gave up her employment claims in this case by signing a general release in a different case that covered "any and all claims, demands, actions, [and] causes of action" related to her employment with Magna Seating of America, Inc. (*See* ECF No. 21-3, PageID.137.) The answer is yes. Accordingly, the Court grants Magna's motion for summary judgment (ECF No. 21) and denies Crawford's motion to bar enforcement of the release (ECF No. 20).

**I.**

Crawford began working for Magna Seating on March 13, 2017. (ECF No. 1, PageID.2.) Three years later, on June 27, 2020, she was placed on medical leave due to a disability. (*Id*. at PageID.3.) She was off work for over a year and a half without incident. (*Id*.) But on January 26, 2022, Magna sent her a letter requiring her to

return to work. (*Id*.) Crawford alleges she then provided Magna with "documentation releasing her return to work" and "requested a reasonable accommodation so that she could do her job and attempt to return to work." (*Id*.) But on February 2, 2022, she was terminated. (*Id*.) She filed a charge with the EEOC and was issued a right to sue letter. (*Id*.) So on December 27, 2023, she filed this lawsuit alleging violations of the Americans with Disabilities Act and the Michigan Persons with Disabilities Civil Rights Act. (*Id*. at PageID.3–13.)

Apparently unbeknownst to Crawford's counsel in this matter, Crawford also filed a worker's compensation claim against Magna related to injuries she allegedly sustained in May 2017 and June 2020. (ECF No. 21, PageID.121.) She was represented by different counsel, Robert Strager of Robert S. Strager & Associates, P.C., in that matter. (*Id*.) As was Magna—it was represented by Russell F. Elder of Hewson & Van Hellemont, P.C. (*Id*.) That case ended when, on November 12, 2024, Crawford executed a settlement agreement resolving her worker's compensation claims. (*Id*.; *see also* ECF No. 21-1.) The settlement was approved a week later by the Workers' Disability Compensation Agency. (ECF No. 21-2.)

In addition to resolving her worker's compensation claim, Crawford also entered into a General Release of Claims and Settlement Agreement with Magna as part of that case. (ECF No. 21-3.) The release stated, in relevant part:

> Crawford hereby releases and forever discharges Magna Seating . . . from any and all claims, demands, actions, causes of action, suits, liabilities, interest, attorneys' fees, damages, or costs of any nature whatsoever . . . which [she has] ever had, now [has] or may subsequently have regarding any cause, matter or thing existing up to the present time in any way relating to [her] employment with Magna Seating or

2

> the termination thereof, including but not limited to . . . claims pursuant to the Americans with Disabilities Act . . . or any other state . . . law giving rise to potential claims, including claims of discrimination, retaliation, or wrongful discharge.

(*Id.* at PageID.137.) Crawford received a separate payment for this release, on top of the settlement she received for her worker's compensation claim. (*Id.* at PageID.138.) And she acknowledged that she "entered into th[e] Agreement voluntarily after receiving advice that she ha[d] the option to retain counsel to explain all of its terms and conditions to her complete satisfaction" and that whether or not she consulted counsel (which she had), she "read th[e] entire Agreement and underst[ood] any and all terms included in the Agreement." (*Id.* at PageID.139.) Lastly, the release stated Crawford had 21 days to review it and seven days to revoke after signing it. (*Id.* at PageID.140.) Crawford signed the release on November 12. (*Id.*)

Some time thereafter, Magna's counsel in this matter, David Cessante of Clark Hill PLC, became aware of the worker's compensation settlement with Crawford. (ECF No. 20-2, PageID.106.) On December 9, Cessante notified Crawford's counsel in this matter, Carla Aikens and Austen Shearouse of Carla D. Aikens, P.L.C., that Magna believed the release covered her ADA and PWDCRA claims and that dismissal of the action was appropriate. (*Id.*)  That was apparently the first time Aikens or Shearouse learned of the agreement, since neither Crawford nor Strager had informed them about it. (*Id.* at PageID.106–107.)

Crawford declined to dismiss her action. Instead, she filed a motion to bar enforcement of her release. (ECF No. 20.) Along with this motion, she filed an affidavit saying that she thought the settlement was only for her workers'

3

compensation claim, that no one had "explained or mentioned that th[e] agreement would cover this case," that she "never intended to dismiss this case with the workers comp settlement and . . . was not told that that would happen," and "never would have signed [the] agreement if [she] had known that it was supposed to dismiss both cases." (ECF No. 20-3, PageID.111–112.) She also claims she never cashed the check that was sent to her as part of the release because she did not intend to enter into that agreement. (ECF No. 30, PageID.204.)

In response, Magna filed a motion for summary judgment, arguing the release precludes Crawford from continuing to pursue her claims in this lawsuit. (ECF No. 21.)

Both motions are adequately briefed (ECF Nos. 24, 27, 30, 31) and do not require further argument, E.D. Mich. LR 7.1(f). For the reasons below, the motion to bar enforcement is DENIED and the motion for summary judgment is GRANTED.

## II.

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Or, stated less formally, Magna is entitled to summary judgment only if no reasonable jury could find in favor of Crawford. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). In making this evaluation, the Court must view facts in the record and reasonable inferences that can be drawn from those facts in the light most favorable

to Crawford. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III.

Crawford does not dispute that the release covers ADA and PWDCRA claims. Nor could she. The release covers "any and all" claims related to her employment with and termination from Magna that she "[has] ever had, now [has] or may subsequently have. (ECF No. 21-3, PageID.137.) And it specifically mentions ADA claims. (*Id.*) She instead calls into question the enforceability of the release, arguing that she did not understand its terms before signing it. (ECF No. 30, PageID.205.)

To be enforceable, a release must have been knowingly and voluntarily executed. *Nicklin v. Henderson*, 352 F.3d 1077, 1080 (6th Cir. 2003). To make this assessment, courts balance the following factors: (1) the plaintiff's experience, background, and education; (2) the amount of time the plaintiff had to consider the release, including whether she had the opportunity to consult with a lawyer; (3) the clarity of the release; (4) the consideration for the release; and (5) the totality of the circumstances. *Id*. The party challenging the release must prove that it should be set aside by a preponderance of the evidence. *Kellogg Co. v. Sabhlok*, 471 F.3d 629, 632 (6th Cir. 2006). Crawford has not made such a showing.

First, as Magna explains, the 51-year-old Crawford attended college, holds multiple certificates, and has worked at manufacturing facilities for over twenty years. (ECF No. 21, PageID.127—128.) Second, Crawford had sufficient time and opportunity to consider the release. She had 21 days to consider whether to sign the

5

agreement, and an additional 7 days to determine whether to rescind her acceptance. (ECF No. 21-3, PageID.140); *see Gascho v. Scheurer Hosp.*, 400 F. App'x 978, 982 (6th Cir. 2010) ("[A] twenty-one-day consideration period and a seven-day reconsideration period suffices to establish a legitimate waiver."); *see also Adams v. Philip Morris, Inc.*, 67 F.3d 580, 583 (6th Cir. 1995) (holding that "five days in which to consider whether to sign [a] waiver" and advice "to consult with an attorney" was sufficient to satisfy the second factor). Crawford had the opportunity to consult with a lawyer, and did in fact do so. (ECF No. 30, PageID.206 ("Plaintiff signed [the release] . . . while meeting with her worker's compensation attorney.").) The fact that she consulted only with her worker's compensation attorney, and not her attorney in this case, is irrelevant. *Cf. Gascho*, 400 F. App'x at 982 (finding this factor favored enforcement of the waiver where the Plaintiff "chose only to ask a divorce attorney, not a labor-law attorney" about the release because the relevant inquiry was "the amount of time given to sign the agreement, not . . . whether the claimant properly used the time to speak to the right kind of attorney").[1] Nor is it relevant what advice her counsel gave her. *Cf. Soltis v. J.C. Penney Corp.*, 635 F. App'x 245, 251 (6th Cir. 2015) (finding a

---

[1] Crawford also states in her brief that "Defendant communicated with Plaintiff about a matter for which it knew Plaintiff's undersigned counsel represented her but it instead communicated about settlement of this case with an attorney who did not have authority to settle this lawsuit." (ECF No. 20, PageID.89.) But this ignores the fact that settlement authority ultimately rests with the party, not with counsel. *See, e.g., Rubel v. Lowe's Home Ctrs., Inc.*, 580 F. Supp. 2d 626, 629 (N.D. Ohio 2008) (describing the "[c]onveyance of settlement authority *from client to counsel*" (emphasis added)).

6

release knowing and voluntary where plaintiff "concede[d] she consulted with counsel" even though "her reliance on counsel's advice was to her detriment").

Third, the release was clear—it explicitly released "any and all claims, . . . suits, . . . or costs of any nature whatsoever . . . which [she has] ever had, now [has] or may subsequently have . . . relating to [her] employment with Magna Seating or the termination thereof," and specifically included "claims pursuant to the Americans with Disabilities Act . . . or any other state . . . law giving rise to potential claims." (ECF No. 21-3, PageID.137.) "The terms of the agreement leave no room for doubt about its meaning." *Gascho*, 400 F. App'x at 982; *see Bell v. Gen. Motors*, No. 11-10905, 2012 WL 2680909, at *3 (E.D. Mich. July 6, 2012) ("While the Court is sympathetic to [plaintiff's] misunderstanding, it is a basic principle of the law that a person cannot avoid the effects of a contract simply because she failed to fully understand its words or meaning."); *see also Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 417 (6th Cir. 2011) ("Whether the parties have mutually agreed to be bound is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." (internal quotation marks omitted)).

Next, Crawford received separate consideration for the general release, in an amount "different from the amount she received for settling her worker's compensation claim"—which should also have alerted her that this was a separate release than her worker's compensation settlement. (ECF No. 31, PageID.216.) Neither party provides the Court with the exact value of this consideration due to

7

confidentiality concerns, but that does not affect the result. Crawford does not dispute that she was given payment nor argue that the consideration was unfair, illusory, or inadequate. In any event, "Courts generally do not inquire into the adequacy of consideration to support a contract, and even a cent or a peppercorn, in legal estimation, would suffice." *Williams v. Saxon Mortg. Servs., Inc.*, No. 13-10817, 2014 WL 765055, at *15 (E.D. Mich. Feb. 26, 2014) (citation modified). Courts merely evaluate whether "something of value is received to which the creditor had no previous right." *Maynard v. Durham & S. Ry. Co.*, 365 U.S. 160, 163 (1961). And here, that standard is met.

Lastly, the Court considers other relevant circumstances. Crawford says in her sworn declaration that she "told the lawyers in the workers comp case that [she] had another lawsuit and [she knew] that they were aware of this lawsuit." (ECF No. 30-1, PageID.212.) Conversely, Crawford states in her brief, "Counsel for Plaintiff spoke with the worker's compensation lawyer for Plaintiff who advised that he was not aware of this litigation." (ECF No. 20, PageID.89.) The Court need not accept as true assertions that are blatantly contradicted by the evidence. *See, e.g., Cunningham v. Shelby County*, 994 F.3d 761, 763 (6th Cir. 2021). And only the affidavit, not the brief, counts as evidence. But even if counsel did not know of this other litigation, Crawford herself knew about the lawsuit and could have contacted her counsel in this case to discuss the release. As Magna points out, "[i]f anyone should have made plaintiff's

8

counsel aware of the General Release, it was Plaintiff."[2] (ECF No. 31, PageID.219.) So the totality of the circumstances weighs in favor of enforcing the agreement.

Lastly, to the extent Crawford argues that the agreement should be set aside for mistake, "unilateral mistakes are insufficient to set aside [an] agreement." *Nicklin*, 352 F.3d at 1081. And to the extent she asserts a defense of fraud or misrepresentation, she must first "show that [she] carried [her] basic responsibility to review [the] document before signing it"—she cannot "conspicuously ignore[] language" in the contract that contradicts what she was allegedly told it contained. *Elec. Workers Loc. 58 Pension Tr. Fund v. Gary's Elec. Serv. Co.*, 227 F.3d 646, 657 (6th Cir. 2000) (citation modified).

In short, having knowingly and voluntarily signed an agreement waiving future employment claims against Magna, Crawford's subjective understanding (or misunderstanding) of the agreement is immaterial to its enforceability. *See Brown v. Heartland Emp. Servs., LLC*, No. 19-11603, 2020 WL 2542009, at *4 (E.D. Mich. May 19, 2020) (finding that plaintiff knowingly agreed to arbitration where, "although [plaintiff] denies clicking 'Acknowledge' knowing that the result would be to mandate arbitration, she does not deny clicking the button").

---

[2] For this same reason, Crawford's request for an evidentiary hearing is not warranted. In her reply, she argues that she cannot make out defenses of fraud, duress, or misrepresentation without getting certain information from Magna—such as how the release was presented. (ECF No. 27, PageID.187.) But Crawford herself knows how the release was presented and has information needed for such defenses. It is not incumbent upon Magna to make Crawford's defense for her.

9

## IV.

For the foregoing reasons, Magna's motion for summary judgment (ECF No. 21) is GRANTED and Crawford's motion to bar enforcement of the release (ECF No. 20) is DENIED.

SO ORDERED.


Date: August 1, 2025


s/Laurie J. Michelson

LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE